## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TEGRA HALL,

      Plaintiff,                         Case No. 09-10637

v.                                     Hon. Gerald E. Rosen

SKY CHEFS, INC., *et al.,*

      Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____March 22, 2011_____

PRESENT:  Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff Tegra Hall commenced this suit in a Michigan court on January 14, 2009,

filing what Defendants have aptly termed a "kitchen sink" complaint against her former

employer, Defendant Sky Chefs, Inc., and ten of her former co-workers and supervisors at

Sky Chefs.  In this 143 paragraph, 17 count complaint, Plaintiff asserts claims of race,

gender, and religious discrimination and harassment under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.,* and Michigan's Elliott-Larsen Civil Rights Act

("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.,* as well as claims of retaliatory

discharge under Title VII, the ELCRA, the Family and Medical Leave Act ("FMLA"), 29

U.S.C. § 2601 *et seq.,* and Michigan's Workers' Disability Compensation Act ("WDCA"), Mich. Comp. Laws § 418.101 *et seq.,* and a common-law tort claim of intentional infliction of emotional distress.  Defendant Sky Chefs removed the case to this Court on February 20, 2009, citing Plaintiff's assertion of claims arising under federal law.  *See* 28 U.S.C. §§ 1441(a), 1331.

By motion filed on March 1, 2010, Defendant Sky Chef and individual Defendants Eric Coleman, Justin Lathem, Jose Venegas, and Karen Damerow seek summary judgment in their favor on each of the claims asserted in Plaintiff's complaint.[1]  Among other contentions raised in this motion, Defendants argue (i) that Plaintiff has failed to establish a *prima facie* case of discrimination based on her race, gender, or religion, (ii) that Plaintiff likewise has failed to establish one or more of the elements of a *prima facie* case of hostile work environment harassment, (iii) that Plaintiff's claims of retaliatory discharge fail for lack of evidence of a causal connection between any protected activity and her discharge, and because Defendants have identified a legitimate, non-retaliatory reason for terminating Plaintiff's employment, and (iv) that Plaintiff has failed to identify any basis whatsoever for charging Defendant Karen Damerow, Sky Chef's human

---

[1]Five other individual Defendants named in Plaintiff's complaint — Mike Darovitz, Derrick Taylor, Darrin Simmons, Tracy Steele, and Dexter Thomas — have yet to appear or file any responsive pleadings in this case, and the clerk has entered their defaults.  After securing these defaults, however, Plaintiff has made no effort to prosecute her claims against these Defendants.  Finally, one other individual Defendant, Tony Hines, initially was represented by the attorneys who have filed the present motion on behalf of Defendants Sky Chefs, Coleman, Lathem, Venegas, and Damerow, but these attorneys were permitted in a September 11, 2009 order to withdraw from representing Defendant Hines, and he has not secured substitute counsel.

resources manager, with liability under any of the theories advanced in Plaintiff's

complaint.  Plaintiff filed a response in opposition to this motion on April 5, 2010,

addressing several of the points raised in Defendants' motion and evidently continuing to

maintain that all 17 counts of the complaint remain viable following discovery, but

leaving some of Defendants' challenges unanswered.  Defendants then filed an April 16,

2010 reply in further support of their motion.

Having reviewed the parties' briefs in support of and opposition to Defendants'

motion, as well as their accompanying exhibits and the record as a whole, the Court finds

that the relevant allegations, facts, and legal arguments are adequately presented in these

written submissions, and that oral argument would not aid the decisional process.

Accordingly, the Court will decide Defendants' motion "on the briefs."  *See* Local Rule

7.1(f)(2), U.S. District Court, Eastern District of Michigan.  For the reasons set forth

below, the Court finds that this motion should be granted.

## II.  <u>FACTUAL BACKGROUND</u>

Defendant Sky Chefs, Inc. provides catering services to various airlines.  Plaintiff

Tegra Hall is an African-American female who was hired by Sky Chefs in May of 2005.

Plaintiff was employed as a utility worker in Sky Chef's sanitation department at Detroit

Metropolitan Airport, where she performed such tasks as loading, unloading, washing and

sanitizing food service trolleys.  During her employment with Sky Chefs, Plaintiff was a

member of Local 24 of the H.E.R.E. union.

**A.    Plaintiff's Complaints About and Difficulties with Her Co-Workers and**

3

**Supervisors**

Between her hiring by Sky Chefs in May of 2005 and her discharge on November 30, 2007, Plaintiff was involved in a number of incidents with co-workers and supervisors, and she lodged a number of complaints about occurrences in the workplace. Sky Chef's human resources manager, Defendant Karen Damerow, testified at her deposition (with some degree of understatement) that Plaintiff "made multiple complaints on multiple issues" during her tenure at Sky Chefs, (*see* Defendants' Motion, Damerow Dep. at 48), and Defendants state without contradiction in the brief in support of their motion that "over 2,600 pages of documentation [were] compiled" in investigating and addressing these complaints, (*see* Defendants' Motion, Br. in Support at 3).

For present purposes, it is not necessary to exhaustively recount these incidents, and a brief summary will suffice.  In September of 2006, Plaintiff claimed that co-worker (and Defendant) Jose Venegas deliberately rammed the trolleys into trash cans, causing the cans to strike Plaintiff on her legs.  (*See* Plaintiff's Dep. at 195, 209-12.)  Plaintiff testified that a supervisor and a lead worker,[2] Defendants Eric Coleman and Derrick Taylor, observed this but took no action.  Plaintiff regarded this as an assault and reported the incident to the police.  (*See* Plaintiff's Dep. at 213-14; *see also* Defendant's Motion, Ex. E.)  Defendant Damerow investigated this incident, and Venegas was disciplined for

---

[2]Human resources manager Damerow testified that a lead worker was an hourly union employee who handed out job assignments and monitored the workplace, but lacked the authority to discipline employees.

4

using inappropriate language.  (*See* Damerow Dep. at 50-54.)

About a month later, in October of 2006, Plaintiff claimed that she was run over by a flatbed cart pushed by a co-worker identified only as "Nimur."  (*See* Plaintiff's Dep. at 62-63, 72-73.)  She required medical attention, and once again reported the incident to the police, (*see* Defendant's Motion, Ex. F), as well as to an employee hotline, (*see* Plaintiff's Dep. at 78-79.)  Plaintiff also filed a claim for worker's compensation benefits arising from this incident.[3]

Throughout this period in 2005-06, and perhaps into 2007, Plaintiff has testified that she was subjected to sexual harassment from her co-workers and supervisors.  She testified, for example, that one of her supervisors, Defendant Tracy Steele, "would try to brush his body parts up against mine" and would "tell me what he would like to do to me sexually."  (Plaintiff's Dep. at 108.)  Another supervisor, Defendant Darrin Simmons, reportedly "brushed his penis up against [Plaintiff's] bottom" and told her "what type of way he would like to have sex with" her.  (*Id.* at 117.)  A lead worker, Defendant Justin Lathem, sang a song, "Shake Your Laffy Taffy," to Plaintiff, and Defendant Venegas stared at Plaintiff and made sexually suggestive remarks to her.  (*Id.* at 120-21.)

Plaintiff has also testified as to race- and religion-based harassment.  She testified, for example, that a number of co-workers frequently called her a "black b*tch," that Defendants Lathem and Venegas used the "N" word in reference to her, and that several

---

[3]Plaintiff later filed another claim for worker's compensation benefits arising from an incident in February of 2007 when she slipped on soap and oil on the workplace floor.

co-workers commented on the color of her skin.  (*See id.* at 96, 166, 174-77.)  Plaintiff

further testified that her co-workers called her a "fake-*ss Christian" and made other

derogatory comments about her when they saw her reading her Bible on her lunch break.

(*See id.* at 180-82.)

Finally, Plaintiff has testified about mistreatment she suffered in retaliation against

her protected activities.  She testified that she made complaints of discrimination and

harassment to her supervisors and to human resources, but that nothing was done or that,

in some instances, the mistreatment intensified.  Plaintiff further testified that after she

filed a charge of discrimination with the EEOC on October 31, 2007, she was told by

supervisor (and Defendant) Tony Hines that her complaint "wasn't going to go anywhere

and that [she] was going to be out of there soon."  (*Id.* at 89.)  In addition, after Plaintiff

took FMLA leave from May to September of 2007 for an injury she sustained while

pushing a trolley, she testified that the harassment and mistreatment worsened because

her co-workers and supervisors thought she was "gone for good" and they "were not

pleased" when she returned from this medical leave.  (*Id.* at 219.)  Similarly, she

attributed some of the write-ups, discipline, and unfavorable treatment she received to the

fact that she had filed claims for worker's compensation benefits.  (*See id.* at 89, 93.)

**B.    Plaintiff's Disciplinary Record and Termination**

Over the course of her employment with Sky Chefs, Plaintiff was issued a number

of verbal and written advisories and disciplinary notices regarding her conduct in the

workplace, culminating in her discharge on November 30, 2007.  Again, it is not

6

necessary to comprehensively recount Plaintiff's disciplinary record, and a brief summary will suffice.

First, Plaintiff was issued a verbal advisory for personal conduct arising from the September 2006 incident in which a co-worker reportedly rammed her with a trolley. The documentation for this advisory states that Plaintiff "became loud and argumentative" when approached by management about the incident, and that her manner "was insolent at best, and bordered on insubordination," and Plaintiff was cautioned that "[b]ehavior of this type . . . cannot be tolerated." (Defendants' Motion, Ex. H.) In this documentation, it was further observed that Plaintiff had made "approximately 18 complaints, charges and grievances regarding roughly 22 different co-workers and management" in the past several months, and that while "[a]ll complaints have been investigated and will continue to be monitored," many of the allegations Plaintiff had made in these complaints "could not be validated." (*Id.*)

On December 7, 2006, Plaintiff was issued a first written advisory for failure to comply with Sky Chefs' attendance policy, based on several instances of tardiness and an early departure. (*See* Defendants' Motion, Ex. I.) In this advisory, Plaintiff was cautioned that "[a]ny future infractions may lead to further disciplinary action u[p] to an[d] including termination." (*Id.*) Written advisories also were issued (i) on December 22, 2006 for a security violation, (Defendants' Motion, Ex. J); (ii) in March of 2007 for personal conduct and for lack of adherence to company standards, with Plaintiff being suspended pending an investigation based upon "witness statements that d[id] not

7

support" allegations she had made against a supervisor, (Defendants' Motion, Exs. K, M);

(iii) again in March of 2007 for continued unsafe behavior in the workplace that had

resulted in safety incidents and injuries, (Defendants' Motion, Ex. L); (iv) on April 17,

2007 for tardiness, (Defendants' Motion, Ex. N); and (v) in May of 2007 for personal

conduct, based on a verbal confrontation with a female co-worker that "continued even

after you were separated and sent back to work," (Defendants' Motion, Ex. O).  In the last

of these disciplinary notices, Plaintiff was expressly informed that she had been issued "a

repeat final advisory," and she was again warned that "[f]urther incidents will result in

discipline up to and including termination."  (*Id.*)[4]

      On November 11, 2007, Plaintiff was involved in an incident that resulted in a

final disciplinary notice and her termination.  According to Plaintiff, a co-worker,

Defendant Dexter Thomas, was using profanity with a lead worker, Ahmed Babuka, and

also directed some of this language toward Plaintiff, purportedly calling Plaintiff a "black

b*tch" and threatening to "f*ck [her] up."  (Plaintiff's Dep. at 227.)  When Plaintiff

complained to Babuka, he told Plaintiff not to worry about it, and sent Thomas to work at

a different location.  (*See id.* at 227-28.)  Plaintiff then complained to a supervisor,

Dorothy Gonzales, who asked Babuka about this incident and was told that it was "no big

deal."  (*Id.* at 228.)  Director of Operations Tonino Palladinelli subsequently looked into

this incident, and was told by Babuka (i) that he had not heard Thomas use profanity, and

---

[4]In addition, the December 22, 2006, March 7, 2007, and April 17, 2007 disciplinary
notices all were designated as "final" written advisories.  (*See* Defendants' Motion, Exs. J, L, N.)

(ii) that Plaintiff approached him after the incident and said, "What kind of man are you?" and "How are you suppose[d] to be the lead?"  (Defendants' Motion, Ex. Q.)

Following this incident, Plaintiff was issued a final written advisory on November 30, 2007 for personal conduct and ability to work with others, and she was informed that her employment had been terminated.  (*See* Defendants' Motion, Ex. R.)  This advisory stated in part:

> On more than one occasion you have been counseled on personal conduct. Despite multiple conversations in which expectations have been discussed you continue to:  Leave your workstation, often to pursue issues that have been or are already being addressed through the internal complaint, and or hotline process.  In doing so you are violating the confidentiality surrounding issues that are being investigated, as well as your signed confidentiality agreement.  In August 2006 you were provided a Code of Conduct during a counseling session.  Since that time you continue to violate the code of conduct repeatedly leaving your workstations for non-emergency situations and to complain about the work performed by other employees . . . .  Additionally you have made unsubstantiated accusations against many of your peers.  (For example on 11/12/2007 you complained that an employee used profanity toward a lead.  When questioned neither the lead nor the employee supported your accusations.  As a result you yelled at the lead and were disrespectful in front of your co-workers.)  Additionally you do not get along with the employees and many have come forward with complaints of feeling singled out and harassed by you.  You have been rude, and insolent toward members of management, lead employees and your peers.  These ongoing behavior issues violate both the Code of Conduct and the [Master National Agreement].  You are being terminated effective immediately.

(*Id.*)[5]

---

[5]The Court notes that Plaintiff's assertion in her response brief that she was "terminated for leaving her workstation," (Plaintiff's Response Br. at 8), is difficult to square with the language of this disciplinary notice.

Plaintiff filed a grievance through her union challenging her discharge, but the grievance was denied.  She then commenced this suit in January of 2009, asserting a laundry list of claims of discrimination, harassment, and retaliation against her former employer, Sky Chefs, and ten of her former supervisors and co-workers.[6]  Sky Chef and four of these individual Defendants now seek summary judgment in their favor on each of these claims.

---

[6]As this Court observed in an order issued in June of 2009, while Plaintiff was still endeavoring to serve each of the individual Defendants named in her complaint:

> The Court notes that Plaintiff's complaint provides little or no guidance in ascertaining the precise grounds upon which each of these individual Defendants could be held liable in this case.  So far as the Court can discern, some of these individuals are not mentioned *anywhere* in the 143 numbered paragraphs of the 24-page complaint, and the allegations as to those individual Defendants who are mentioned are minimal at best.  Moreover, in sixteen of the seventeen (17) counts of the complaint, Plaintiff refers collectively to the alleged conduct of the "Defendants," without any effort to link the actions of any specific Defendant to any particular theory of recovery or to specify which Defendants are or may be subject to liability under a given count.  This sort of vague, broad-brush pleading falls short of even the lenient standards set forth in Fed. R. Civ. P. 8(a), and Plaintiff and her counsel are expressly cautioned that the Court will closely and carefully monitor the status of Plaintiff's claims throughout this case to ensure that each claim against each named party is viable and comports with the standards of Fed. R. Civ. P. 11(b).

(6/3/2009 Order at 1 n.1.)  The Court returns to this matter at the conclusion of this opinion.

# III.  ANALYSIS

## A.    The Standards Governing Defendants' Motion

Through the present motion, Defendant Sky Chefs and four of the individual

Defendants — Eric Coleman, Justin Lathem, Jose Venegas, and Karen Damerow — seek

summary judgment in their favor on each of Plaintiff's seventeen claims.  Under the

pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c)(2).[7]  As the Supreme Court has explained, "the plain language of Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden

of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552

(1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a

light most favorable to the nonmoving party.  *Pack v. Damon Corp.,* 434 F.3d 810, 813

(6th Cir. 2006).  Yet, the nonmoving party "may not rely merely on allegations or denials

in its own pleading," but "must — by affidavits or as otherwise provided in [Rule 56] —

---

[7]Effective December 1, 2010, Rule 56 has been revised in various respects, but the language quoted here (and immediately below) reflects the Rule as it read when Defendants filed the present motion.

11

set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

Moreover, any supporting or opposing affidavits "must be made on personal knowledge,

set out facts that would be admissible in evidence, and show that the affiant is competent

to testify on the matters stated."  Fed. R. Civ. P. 56(e)(1).  Finally, "the mere existence of

a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat

summary judgment."  *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and

citation omitted).

**B.      Plaintiff Has Failed to Establish a *Prima Facie* Case of Discrimination Based on Her Race, Gender, or Religion.**

In six of the seventeen counts of her complaint, Plaintiff has asserted claims of

race, gender, and religious discrimination under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e *et seq.,* and under Michigan's Elliott-Larsen Civil Rights Act

("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.*  Through the present motion,

Defendants seek summary judgment in their favor on each of these claims, arguing that

Plaintiff has failed to establish a *prima facie* case of any of these forms of discrimination.

Moreover, even assuming Plaintiff had established a *prima facie* case, Defendants

contend that Plaintiff's employer, Sky Chefs, has articulated a legitimate, non-

discriminatory reason for Plaintiff's discharge, and that Plaintiff has failed to produce any

evidence suggesting that this stated reason was a pretext for unlawful discrimination.  The

Court agrees.

In this case, Plaintiff does not claim to have produced any direct evidence of

12

discrimination in the decision to terminate her employment,[8] but instead expressly

acknowledges that her claims of disparate treatment are properly analyzed under the

familiar burden-shifting approach adopted by the Supreme Court in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).   (*See* Plaintiff's

Response Br. at 11.)  Under the first step of this tripartite approach, Plaintiff must

establish a *prima facie* case consisting of four elements:  (i) that she was a member of a

protected class; (ii) that she was qualified for her position; (iii) that she suffered an

adverse employment action; and (iv) that she was replaced by a person outside the

protected class or was treated less favorably than a similarly situated individual outside

the protected class.  *See Johnson v. University of Cincinnati,* 215 F.3d 561, 572-73 (6th

Cir. 2000); *Town v. Michigan Bell Telephone Co.,* 455 Mich. 688, 568 N.W.2d 64, 68

(1997).

For present purposes, at least, Defendants concede that Plaintiff has established the

first three elements of her *prima facie* case,[9] and they challenge only her showing that she

---

[8]For what it is worth, while Plaintiff has testified as to a number of discriminatory remarks made by her co-workers and supervisors, she has not pointed to evidence of any such statements made by decision-makers in connection with the decision-making process that led to her termination.  *See Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 433 (6th Cir. 2002) (holding that comments made by someone with "no involvement in the decision-making process" did not constitute direct evidence of discrimination).

[9]Regarding the "adverse employment action" element of a *prima facie* case, Defendants acknowledge that Plaintiff's discharge would qualify, but they deny that any of the other forms of mistreatment identified by Plaintiff would rise to this level.  Plaintiff has not addressed this issue in her response to Defendants' motion, and thus she has abandoned any claim of disparate treatment based upon anything other than her discharge.

13

was treated differently from similarly situated individuals outside the protected classes of

which she is a member.[10]  As the Sixth Circuit has explained, a plaintiff satisfies this

element of a *prima facie* case by "demonstrat[ing] that he or she is similarly-situated to

the non-protected employee in all *relevant* respects," yet was treated differently.

*Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 353 (6th Cir. 1998); *see also*

*Town,* 568 N.W.2d at 70 (applying the same standard under Michigan law).  "[T]o be

deemed 'similarly-situated' in the disciplinary context, the individuals with whom the

plaintiff seeks to compare his/her treatment must have dealt with the same supervisor,

have been subject to the same standards and have engaged in the same conduct without

such differentiating or mitigating circumstances that would distinguish their conduct or

the employer's treatment of them for it."  *Ercegovich,* 154 F.3d at 352 (internal quotation

marks and citation omitted).

Plaintiff's effort to establish this prong of a *prima facie* case rests almost entirely

on conclusory assertions that are unsupported by citation to the record.[11]  Regarding her

---

[10]While this fourth and final element of a *prima facie* case may be established by showing
that the plaintiff was replaced by someone outside the protected class, Plaintiff has made no
effort to establish this element via this route.

[11]Under the recent amendments to Fed. R. Civ. P. 56, such bare assertions of counsel
unbacked by citation to the record clearly do not suffice to counter an opposing party's request
for summary judgment.  In its current version, Rule 56 mandates that "[a] party asserting that a fact
. . . is genuinely disputed must support the assertion by . . . ***citing to particular parts of
materials in the record,***" and it further provides that "[t]he court need consider only the cited
materials" in determining the existence of factual disputes.  Fed. R. Civ. P. 56(c)(1),(3)
(emphasis added).

Yet, while the amended Rule 56 expressly requires citation to the record, this Court has

14

claim of gender discrimination, she points exclusively to the different treatment

purportedly given to her and co-worker Dexter Thomas in the incident that led to her

termination.  This example of different treatment of similarly situated employees,

however, is flawed on several grounds.  First, Plaintiff's claim that no action was taken

against Thomas evidently rests solely on her own deposition testimony that "nothing was

done," (*see* Plaintiff's Dep. at 229-30), but there is no indication in the record that

Plaintiff has personal knowledge about any disciplinary measures that might have been

---

recognized that this obligation pre-dates these amendments.  Specifically, in a case where the
plaintiff was represented by the very same counsel who represents Plaintiff here, the Court
observed:

> Nothing in either the Federal Rules or case law supports an argument that the trial
> court must conduct its own probing investigation of the record.  To the contrary, it
> would be utterly inappropriate for the court to abandon its position of neutrality in
> favor of a role equivalent to champion for the non-moving party:  seeking out
> facts, developing legal theories, and finding ways to defeat the motion.
> Accordingly, the Court declines to search the record on Plaintiff's behalf for
> evidence . . . . to establish [an] element of his *prima facie* case.

*Harrison v. Oakland County,* 612 F. Supp.2d 848, 859 (E.D. Mich. 2009) (quotation marks,
alterations, and citations omitted).

Likewise, in this case, while the "Statement of Facts" section of Plaintiff's brief in
response to Defendants' motion is supported by citations to the record — albeit a record that
consists almost exclusively of Plaintiff's deposition testimony — the "Law and Argument"
section of this brief is totally bereft of any such citations, leaving the Court to its own devices in
confirming that Plaintiff's arguments have evidentiary support.  In some instances, at least, such
support appears to be lacking — *e.g.,* Plaintiff supports one of her arguments with the
proposition that "Muslim employees were allowed special treatment to observe their religion,"
(Plaintiff's Response Br. at 12), but no such factual assertion (or supporting citation) appears
anywhere in Plaintiff's statement of facts.  This presumably is why the amended Rule 56 (and
the case law before it) requires specific citations to the record in support of each argument — so
that the courts need not engage in fact-checking on behalf of the parties, a role that is patently
inconsistent with the courts' position of neutrality in deciding motions and presiding over cases.

15

imposed on Thomas as a result of this incident.[12]  In addition, while Plaintiff invites the Court to assume that she and Thomas were similarly situated in the relevant respects — *e.g.,* that they reported to the same supervisor and were subject to the same standards of conduct — no effort has been made to identify evidentiary support for this proposition.

Indeed, in one respect, it seems virtually certain that Plaintiff and Thomas were ***not*** similarly situated.  As discussed at length in the Court's recitation of the pertinent facts, Plaintiff's disciplinary record with Sky Chefs featured an extensive series of verbal and written advisories — with several of the latter designated as "final" written advisories — and she was expressly warned in writing on multiple occasions that further infractions could lead to her dismissal.  (*See, e.g.,* Defendants' Motion, Exs. I, L, O.)  Nothing in the record suggests that Thomas had a comparable disciplinary record.  Even assuming, then, that Plaintiff and Thomas engaged in precisely the same conduct in the November 11, 2007 incident at issue,[13] the disparities in the disciplinary records of these two individuals defeats any inference of gender discrimination that might otherwise arise from Sky Chefs' decision to terminate Plaintiff but not Thomas.  *See Russell v. University of Toledo,* 537 F.3d 596, 607-08 (6th Cir. 2008) (finding that the plaintiff in that case was not similarly

---

[12]Indeed, Plaintiff evidently never returned to work following this incident, so it is not clear how she would know whether any action was taken against Thomas.  Nor, so far as the record reveals, did Plaintiff and her counsel make any effort to pursue this question in discovery — or, if they did so, they have not directed the Court's attention to anything they might have learned.

[13]As discussed below, Sky Chefs' management concluded otherwise following an investigation of this incident.

16

situated to co-workers who lacked prior disciplinary records).  Because Thomas is the only co-worker identified by Plaintiff as a similarly situated male employee who was treated differently, and because she has failed to show that she and Thomas were similarly situated as this term is defined in the case law, Plaintiff cannot establish the fourth and final element of a *prima facie* case of gender discrimination.

Plaintiff's efforts to establish this element of a *prima facie* case of race or religious discrimination warrant little discussion.  With regard to Plaintiff's claim of race discrimination, the sum total of her argument — again, without citation to the record — is that Sky Chefs' human resources manager, Defendant Damerow, "admitted that she was aware of Defendant Lathem's (who is Caucasian) use of the term 'nigga' and that he admitted he sang a lewd song about female anatomy, but he was not disciplined for any violation of policy."  (Plaintiff's Response Br. at 12.)  First, Plaintiff's assertion about Damerow's awareness of co-worker Lathem's use of the "N" word is utterly unsupported by citation to the record, and the Court declines Plaintiff's invitation to search for evidentiary support for this assertion.  Next, with regard to the lewd song, Defendants note the evidence in the record that Lathem was, in fact, verbally instructed to stop singing this song.  (*See* Damerow Dep. at 59-60; Lathem Dep. at 19.)  Finally, and most importantly, Plaintiff fails to suggest how any purportedly different treatment of a white co-worker for offensive speech at some unspecified point in the past[14] might give rise to

---

[14]At her deposition, Plaintiff identified some of the race-based comments of her co-workers as having been made in early 2006, (*see* Plaintiff's Dep. at 165), but she did not specify

17

an inference that Plaintiff's November 2007 termination — which, after all, is the sole adverse action giving rise to Plaintiff's claims of discrimination — was motivated by racial animus.  Accordingly, Plaintiff has not established a *prima facie* case of race discrimination.

Turning next to Plaintiff's claim of discrimination on account of her religion, her effort to establish a *prima facie* case rests solely upon the terse — and, once again, unsupported — assertions that she was "treated differently than similarly situated non-religious or non-Christian employees" (who Plaintiff does not identify), and that unspecified "Muslim employees were allowed [unspecified] special treatment to observe their religion."  (Plaintiff's Response Br. at 12.)  These contentions, in addition to being utterly bereft of factual support, are so woefully inadequate to raise an inference of discrimination in Plaintiff's discharge as to constitute an abandonment of Plaintiff's claim of discrimination on account of her religion.

Finally, even assuming that Plaintiff had established a *prima facie* case of discriminatory discharge on account of her gender, race, or religion, Defendant Sky Chefs has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment — namely, that despite several prior final written advisories, she violated the Sky Chefs code of conduct in the November 12, 2007 incident by making unsubstantiated accusations against a co-worker and yelling at and being disrespectful to a lead worker.

---

when Lathem used the "N" word.

18

(*See* Defendants' Motion, Ex. R.)  Thus, under the third step of the *McDonnell Douglas*
burden-shifting approach, Plaintiff must produce evidence that the reason identified by
Defendants is a pretext for unlawful discrimination.  *See Russell,* 537 F.3d at 604; *Town,*
568 N.W.2d at 68.  Plaintiff has manifestly failed to satisfy this burden, as she ***does not
address the question of pretext whatsoever*** in her response to Defendants' motion.

    In any event, while Plaintiff might dispute the determination by Sky Chefs'
management, following an investigation, (*see* Defendants' Motion, Ex. Q), that she
engaged in insubordinate conduct toward lead worker Ahmed Babuka and that, contrary
to her accusation, co-worker Dexter Thomas had not sworn at this lead worker, Sky Chefs
was entitled to act upon the results of this investigation and discharge Plaintiff so long as
it took steps to be "reasonably informed" before making this decision, and so long as this
decision rested upon an "honest belief" that Plaintiff had engaged in the misconduct cited
in her final disciplinary notice.  *See Harrison,* 612 F. Supp.2d at 864-65 (internal
quotation marks and citations omitted).  Plaintiff has not suggested any basis for
challenging the decisionmaking or investigative process leading up to her termination, nor
has she endeavored to explain why Sky Chefs' management should not have credited the
account given by lead worker Babuka that he did not hear co-worker Thomas use
profanity and that Plaintiff had questioned his authority and leadership.  (*See* Defendants'
Motion, Ex. Q.)  In addition, and as discussed earlier, even if Plaintiff and co-worker
Thomas had engaged in precisely the same misconduct, Plaintiff's prior disciplinary
record provided ample reason for Sky Chefs to determine that her discharge was

warranted, and any purportedly disparate treatment of Plaintiff and Thomas would not support the inference that Sky Chefs' stated basis for terminating Plaintiff's employment was a pretext for discrimination. Accordingly, for this and the other reasons stated earlier, Defendants are entitled to summary judgment in their favor on Plaintiff's federal and state-law claims of discrimination.

**C.      Plaintiff Has Failed to Establish a *Prima Facie* Case of Harassment Based on Her Race, Gender, or Religion.**

Next, in six more counts of her complaint, Plaintiff has asserted claims under Title VII and Michigan's ELCRA of hostile work environment harassment based on her sex, race, and religion. In the present motion, Defendants contend that Plaintiff has failed to establish a *prima facie* case of any of these forms of harassment. The Court agrees.

As a threshold matter, before turning to the merits of Plaintiff's claims of harassment, the Court observes that most or all of her claims brought under Title VII appear to be time-barred. "[T]he courts have recognized that the filing of a timely charge with the EEOC is a prerequisite to a Title VII action." *Marquis v. Tecumseh Products Co.,* 206 F.R.D. 132, 169 (E.D. Mich. 2002). Moreover, "[t]o be deemed timely under Title VII, an EEOC charge must be filed 'within three hundred days after the alleged unlawful employment practice occurred.'" *Marquis,* 206 F.R.D. at 169 (quoting 42 U.S.C. § 2000e-5(e)(1)); *see also Boykin v. Michigan Department of Corrections,* No. 99-1345, 2000 WL 491512, at *1 (6th Cir. Apr. 18, 2000). In this case, Plaintiff evidently

20

filed her first EEOC charge on October 31, 2007, (*see* Plaintiff's Response, Ex. F),[15] so it follows that she presumptively cannot complain here of any employment practices that occurred prior to January 4, 2007.  While Plaintiff's deposition testimony is not altogether clear as to when she was subjected to the various forms of harassment giving rise to her claims, every date that she specified in this testimony extended, at the latest, to the end of 2006.  (*See, e.g.,* Plaintiff's Dep. at 108, 121-23, 131, 144-45, 165, 180-81.)

To be sure, a claim may encompass incidents outside of this 300-day limit, but only upon a "showing that the current violation, falling within the limitations period, is indicative of a pattern of similar discriminatory acts continuing from the period prior to the limitations period."  *Marquis,* 206 F.R.D. at 169 (internal quotation marks and citations omitted); *see also Boykin,* 2000 WL 491512, at *2.  This "continuing violation doctrine," however, is "intended to reach the situation where, by virtue of the nature of the alleged discrimination, the worker did not — and could not — become aware of the need to take legal action to vindicate her rights until a period of time had elapsed." *Marquis,* 206 F.R.D. at 169 (internal quotation marks and citations omitted).  In this case, Plaintiff has testified that she lodged both verbal and written complaints about the harassment she was experiencing.  (*See, e.g.,* Plaintiff's Dep. at 96-100, 102-03, 108-10, 122-23, 131, 135-36, 139, 143-45, 165-66, 175-76, 178-79, 182, 190.)  The courts have

---

[15]The Court notes that this EEOC charge raises only complaints of sexual and religious harassment and retaliation, so it is unclear whether Plaintiff exhausted her administrative remedies with respect to her claim of race-based harassment and her claims of disparate treatment on account of her race, gender, and religion.  While Plaintiff perhaps might have filed an additional EEOC charge following her termination, no such charge appears in the record.

held that such contemporaneous complaints evidence an employee's "awareness of and duty to assert his or her rights," thereby defeating the employee's appeal to the continuing violation doctrine. *Boykin,* 2000 WL 491512, at *2 (internal quotation marks and citations omitted); *see also Marquis,* 206 F.R.D. at 170. Accordingly, it appears that Plaintiff's Title VII claims of harassment are largely (if not entirely) time-barred.

Nonetheless, to the extent that they are not, and to the extent that Plaintiff is pursuing her claims of harassment under Michigan's ELCRA, Plaintiff must first establish the elements of a *prima facie* case. To establish a *prima facie* case of hostile work environment harassment under Title VII, Plaintiff must show (i) that she is a member of a protected class, (ii) that she was subjected to unwelcome harassment of a sexual, racial, or religious nature, (iii) that this harassment was based on her protected status, whether her gender, race, or religion, (iv) that the harassment had the effect of unreasonably interfering with her work performance by creating a hostile work environment, and (v) that there is a basis for charging Sky Chefs with liability for this harassment. *See Michael v. Caterpillar Financial Services Corp.,* 496 F.3d 584, 600 (6th Cir. 2007); *Harrison,* 612 F. Supp.2d at 855. The standards under Michigan's Elliott-Larsen Act are similar, except that an employer may be held liable for the creation of a hostile work environment only if it "failed to take prompt and adequate remedial action after having been reasonably put on notice of the harassment." *Chambers v. Trettco, Inc.,* 463 Mich. 297, 614 N.W.2d 910, 915-16 (2000).

In their present motion, Defendants challenge only the last two elements of this

*prima facie* case.  This Court recently described the showing necessary to establish the

fourth element of this standard:

> As the Sixth Circuit has explained, a hostile work environment exists
> — and, thus, the fourth prong of a *prima facie* case is established — only
> where a plaintiff is subjected to conduct that is "sufficiently severe or
> pervasive to alter the conditions of [his] employment."  *Abeita v.
> Transamerica Mailings, Inc.,* 159 F.3d 246, 251 (6th Cir. 1998) (internal
> quotation marks and citations omitted).  The conduct in question "must be
> judged by both an objective and a subjective standard" — that is, "[t]he
> conduct must be severe or pervasive enough to create an environment that a
> reasonable person would find hostile or abusive, and the victim must
> subjectively regard that environment as abusive."  *Abeita,* 159 F.3d at 251
> (internal quotation marks and citations omitted).  Among the factors to be
> considered in determining the existence of a hostile work environment are
> "the frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance; and
> whether it unreasonably interferes with an employee's work performance."
> *Clark [v. United Parcel Service,* 400 F.3d 341, 351 (6th Cir. 2005)]
> (internal quotation marks and citation omitted).  "The harassment should be
> ongoing, rather than a set of isolated or sporadic incidents."  *Clark,* 400
> F.3d at 351.

*Harrison,* 612 F. Supp.2d at 855-56.

Plaintiff and her counsel have made very little effort to address this element of a

*prima facie* case or to identify supporting evidence in the record.  Turning first to her

claim of sexual harassment, Plaintiff states (without citation to the record or supporting

details) that she "was subjected to near-constant harassment from multiple supervisors

and co-workers, who would physically touch or rub up against Plaintiff and make obscene

remarks about her body and various sexual acts they would like to engage in with her."

(Plaintiff's Response Br. at 14.)  She further asserts that her showing of a hostile work

environment is bolstered by her testimony as to her "awareness of other female

23

employees being harassed in the same manner that she was."  (*Id.*)[16]

Assuming, for present purposes, that these vague and unsupported assertions in Plaintiff's response brief could satisfy the objective prong of the standard for establishing a hostile work environment, Plaintiff has not even attempted to identify any evidence in the record that she subjectively regarded the conduct of her co-workers and supervisors as abusive.  To the contrary, she testified at her deposition that she regarded the name-calling in the workplace as "lesser offenses to me," a "lighter thing," and "like high school junk to me," and she contrasted this with workplace incidents that rendered her "not . . . able to do my production."  (Plaintiff's Dep. at 176-77.)  More generally, Plaintiff has not pointed to any evidence in the record, whether in her deposition testimony or elsewhere, that she perceived the harassing conduct of her co-workers and supervisors as interfering with her work performance, altering the conditions of her employment, or giving rise to a hostile or abusive work environment.  Under this record, while Plaintiff might well have viewed this conduct as unwelcome, it cannot be said that she "subjectively regarded it as so severe or pervasive as to create an abusive or hostile work environment."  *Harrison,* 612 F. Supp.2d at 856.[17]

---

[16]Again, this assertion is unsupported by citation to the record, nor does the "Statement of Facts" portion of Plaintiff's response brief mention (or cite) any such testimony.

[17]For what it is worth, it is not clear that Plaintiff could establish that the mistreatment of her and the offensive remarks made to her by her co-workers were attributable to her gender (or her race or religion, for that matter).  She testified at her deposition that she was "the bottom of the barrel be it male or female" at the workplace, and she expressed her view that she was treated worse than any of her co-workers, whether male or female, black or white, or Christian or non-Christian.  (Plaintiff's Dep. at 263-64, 269-72.)  Such personal animus directed at Plaintiff

This same analysis applies as well to (and defeats) Plaintiff's claims of harassment based on her race and religion, where Plaintiff again has made essentially no effort to establish the subjective prong of the "hostile work environment" standard with respect to these claims.  Regarding her claim of race-based harassment, Plaintiff offers only the conclusory assertion that "the harassment was severe and pervasive as it occurred on a daily basis from many different employees," and she points broadly — and, once again, without citation to the record — to her testimony that "instead of calling her by her name, most of the time she was called 'black bitch.'"  (Plaintiff's Response Br. at 15.)  As for her claim of religion-based harassment, Plaintiff does not offer even so much as an unsupported assertion that the remarks and conduct about which she complains were sufficiently severe and pervasive to create a hostile work environment.  (*See id.* at 16.)  Yet, beyond her counsel's generalized characterizations of the conduct engaged in by Plaintiff's co-workers and supervisors, and counsel's *ipse dixit* labeling of this conduct as "severe and pervasive," Plaintiff has made no attempt to identify any specific evidence in the record indicating that she subjectively regarded the conduct and remarks of her co-workers as so severe or pervasive as to give rise to an abusive or hostile work

---

individually is not indicative of discrimination based on membership in a protected class.  *See Bowman v. Shawnee State University,* 220 F.3d 456, (6th Cir. 2000) (holding that the plaintiff had failed to establish a claim of sexual harassment because, "[w]hile he may have been subject to intimidation, ridicule, and mistreatment, he has not shown that he was treated in a discriminatory manner because of his gender"); *Nizami v. Pfizer Inc.,* 107 F. Supp.2d 791, 805 n.15 (E.D. Mich. 2000).

25

environment.[18]  It follows that she has failed to establish a *prima facie* case of hostile

work environment harassment based on her gender, race, or religion, whether under Title

VII or the ELCRA.[19]

Before turning to the remaining claims asserted in Plaintiff's complaint, one point

bears emphasis.  In determining whether Defendants are entitled to summary judgment in

their favor on Plaintiff's claims of hostile work environment harassment, the Court must

view the evidence in a light most favorable to Plaintiff, and must, in particular, credit

Plaintiff's deposition testimony regarding the many inappropriate comments directed at

her and the inappropriate conduct engaged in by her co-workers and supervisors.  In

resolving Defendants' motion, the Court has not been called upon to decide whether the

comments and conduct identified in this deposition testimony would satisfy the objective

prong of the "hostile work environment" standard — that is, whether this behavior was

"severe or pervasive enough to create an environment that a reasonable person would find

hostile or abusive."  *Harrison,* 612 F. Supp.2d at 856 (internal quotation marks and

citation omitted).  Rather, the Court has considered Plaintiff's showing only as to the

subjective prong of this standard — that is, whether Plaintiff subjectively regarded her

work environment as hostile or abusive.  *Harrison,* 612 F. Supp.2d at 856.

---

[18]Moreover, and as discussed above, Plaintiff's deposition testimony appears to indicate that she did not regard the name-calling of her co-workers as sufficiently severe as to interfere with her work performance or give rise to a hostile work environment.

[19]In light of this conclusion, the Court need not address Defendants' contention that Plaintiff also failed to establish the fifth and final prong of a *prima facie* case of harassment.

Once Defendants advanced this challenge, it was Plaintiff's obligation under Rule 56 to marshal the evidence in the record which, if credited and viewed in her favor, would establish this element of a *prima facie* case of hostile work environment harassment.  As is repeatedly the case throughout Plaintiff's brief in response to Defendants' motion, Plaintiff and her counsel have sought to satisfy this obligation through terse, conclusory, and question-begging assertions that the harassment in her former workplace was "severe and pervasive," (*see* Plaintiff's Response Br. at 14, 15), and through broad and generalized characterizations of the conduct engaged in by her co-workers, with these latter passages in her brief utterly lacking in specific details or citation to the record.  This approach is manifestly inadequate — particularly, as explained earlier, under Rule 56 as recently amended, but also under the Rule prior to these amendments — to meet the non-moving party's burden to "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Whatever might be said about whether the record in this case ***could***, if properly marshaled, establish each of the elements of a *prima facie* case of hostile work environment harassment, the Court readily concludes that the effort put forward by Plaintiff and her counsel does not suffice to satisfy the burden placed on the non-moving party under Rule 56.  Having so determined, the Court's inquiry is at an end.  There is no place in this inquiry for fashioning arguments or gathering evidence on a party's behalf. Neither should the Court's ruling be viewed as any sort of determination on the merits that the workplace conduct identified in Plaintiff's deposition testimony is beyond the reach of federal or state anti-discrimination law.

27

**D.**    **Plaintiff Has Failed to Establish a *Prima Facie* Case of Retaliatory Discharge, Nor Has She Produced Evidence that Sky Chefs' Stated, Non-Retaliatory Reason for Her Discharge Was Pretextual.**

Next, Plaintiff has asserted four claims of retaliatory discharge, alleging that she was terminated in response to her exercise of protected activity under Title VII, the ELCRA, the FMLA, and Michigan's WDCA. In their present motion, Defendants argue that each of these claims fails for lack of evidence of a causal connection between Plaintiff's protected activities and her discharge, and because Plaintiff cannot show that Sky Chefs' stated, non-retaliatory reason for this discharge was pretextual. The Court agrees.

In the absence of direct evidence of retaliatory motive,[20] Plaintiff's initial burden in proving a claim of retaliation under Title VII or the ELCRA is to establish the four elements of a *prima facie* case: (i) that she engaged in "protected activity" within the meaning of these statutes, (ii) that this exercise of protected activity was known to her employer, (iii) that she suffered an adverse employment action, and (iv) that there was a causal connection between the protected activity and the adverse action. *See DiCarlo v. Potter,* 358 F.3d 408, 420 (6th Cir. 2004); *Garg v. Macomb County Community Mental Health Services,* 472 Mich. 263, 696 N.W.2d 646, 653 (2005). A *prima facie* case of retaliation under the FMLA features essentially the same elements, *see Edgar v. JAC*

---

[20]Plaintiff does not claim to have produced any such direct evidence here, but instead concedes that her retaliation claims are properly analyzed under the *McDonnell Douglas* burden-shifting approach. (*See* Plaintiff's Response Br. at 16.)

28

*Products, Inc.,* 443 F.3d 501, 508 (6th Cir. 2006), as does a claim of retaliation under

Michigan's WDCA, *see Chiles v. Machine Shop, Inc.,* 238 Mich. App. 462, 606 N.W.2d

398, 404 (1999).  In their motion, Defendants concede that Plaintiff engaged in protected

activities within the meaning of each of these four statutes, and that her protected

activities were known to her employer.  Defendants further acknowledge that Plaintiff's

discharge qualifies as an adverse employment action.[21]  The sole remaining question,

then, is whether Plaintiff has established a causal connection between her protected

activities and her discharge.

    With respect to her claims of retaliation under Title VII and the ELCRA,

Plaintiff's effort to establish the requisite causal connection rests entirely upon the

temporal proximity between her protected activity and her discharge.  (*See* Plaintiff's

Response Br. at 17-18.)  Yet, while the Sixth Circuit has found that temporal proximity

alone may be "significant enough to constitute evidence of a causal connection" where

"an adverse employment action occurs ***very close in time*** after an employer learns of a

protected activity," the court was addressing a case in which the plaintiff employee was

discharged "the very day" and "immediately after" the employer learned of his protected

activity.  *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir. 2008) (emphasis

added).  Here, in contrast, Plaintiff acknowledges that her protected activity — namely,

---

[21]As with her claims of disparate treatment, Plaintiff makes no effort in her response to
Defendants' motion to argue or show that she suffered any adverse employment action apart
from her discharge that could support a claim of retaliation.  Thus, the Court addresses only
whether Plaintiff has established a *prima facie* case of retaliatory discharge.

29

her filing of a charge of discrimination — occurred "approximately one month prior to her termination."  (Plaintiff's Response Br. at 17.)  Plaintiff cites no authority for the proposition that this one-month gap between her protected activity and her discharge qualifies as "very close in time" under the case law, such that this temporal proximity alone suffices to establish a causal connection.  Moreover, the Michigan courts, unlike the Sixth Circuit, have held that temporal proximity alone does ***not*** suffice to establish a causal connection, *see Garg,* 696 N.W.2d at 660; *West v. General Motors Corp.,* 469 Mich. 177, 665 N.W.2d 468, 472-73 (2003), so it follows that Plaintiff has failed to establish this prong of a *prima facie* case of retaliation under the ELCRA.

Plaintiff fares no better in her effort to establish the "causal connection" prong of her *prima facie* case of retaliation under the FMLA and the WDCA.  First, while she alleges that her co-workers' mistreatment of her escalated after she made claims for worker's compensation benefits and after she returned from her FMLA leave, the Court noted above that Plaintiff has made no effort to show that any such mistreatment rose to the level of an adverse employment action.  Thus, it is only evidence of a causal connection between protected activity and Plaintiff's ***discharge*** that is relevant to her *prima facie* case of retaliation.  Next, to the extent that Plaintiff appeals to temporal proximity as evidencing the requisite causal connection, this effort fails in light of the nearly three-month gap between her return from FMLA leave and her discharge, and the gap of nine months or more between her most recent claim for worker's compensation

benefits (apparently in February of 2007) and her discharge.[22]

Even assuming Plaintiff could establish a *prima facie* case of retaliation, Defendant Sky Chefs has identified a legitimate, non-retaliatory reason for Plaintiff's discharge, and Plaintiff has not produced evidence that this reason is pretextual. As discussed earlier with respect to Plaintiff's claims of discrimination, Sky Chefs has produced evidence that the decision to terminate Plaintiff's employment was based upon the outcome of an investigation disclosing that Plaintiff had engaged in insubordinate conduct toward lead worker Ahmed Babuka and that, contrary to her accusation, co-worker Dexter Thomas had not sworn at this lead worker. In arguing that this reason is pretextual, Plaintiff mischaracterizes the infraction leading to her discharge as "leav[ing] her workstation," (Plaintiff's Response Br. at 18), and she asserts that Thomas also left his workstation but was not disciplined. Yet, it is evident from the final disciplinary notice issued to Plaintiff that she was not terminated simply for leaving her workstation. (*See* Defendants' Motion, Ex. R.) In addition, the Court observed earlier that the record is silent — apart, that is, from Plaintiff's testimony based upon no apparent personal knowledge — as to whether Thomas also was disciplined as a result of this incident.

---

[22]The Court also notes that Plaintiff's FMLA-based claim of retaliatory discharge seemingly is defeated by Plaintiff's own deposition testimony. When asked about this claim, Plaintiff testified that her co-workers' mistreatment of her intensified after her return from FMLA leave because "[a] lot of people thought I was gone, and gone for good," and "when I came back, they were not pleased." (Plaintiff's Dep. at 219.) Plainly, then, this testimony does not evidence retaliation based upon Plaintiff's exercise of her right to FMLA leave, but retaliation based on displeasure that Plaintiff had ***returned*** from this leave. In any event, nothing in the record forges any link between this displeasure and the subsequent decision by Sky Chefs management officials, over two months later, to terminate Plaintiff's employment.

Finally, and as also discussed earlier, Plaintiff's extensive disciplinary record, featuring several prior final written warnings, belies the notion that she and Thomas were similarly situated, and also defeats any inference of a retaliatory motive that might otherwise arise from Sky Chefs' different treatment of Plaintiff and Thomas, even assuming (contrary to Sky Chefs' investigation) that the two had engaged in the same or similar conduct. Accordingly, Plaintiff has failed to provide evidentiary support for her contention that Sky Chefs' stated reason for her termination was a pretext for retaliation.

**E.    Plaintiff Has Failed to Produce Evidence of Extreme and Outrageous Conduct That Could Support a Claim of Intentional Infliction of Emotional Distress.**

Finally, in the seventeenth and final count of her complaint, Plaintiff asserts a state-law claim of intentional infliction of emotional distress.  The Michigan Supreme Court "has not officially recognized" this tort, but "[a]ssuming that the cause is valid," a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."  *Vanvorous v. Burmeister,* 262 Mich. App. 467, 687 N.W.2d 132, 141-42 (2004) (internal quotation marks and citations omitted). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Garretson v. City of Madison Heights,* 407 F.3d 789, 799 (6th Cir. 2005) (internal quotation marks and citation omitted).  "Liability will not be found for mere insults, indignities, threats, annoyances, petty oppressions, or other

32

trivialities; rather, the case must be one in which the facts would arouse the resentment of an average member of the community against the actor, leading him to exclaim, 'Outrageous!'" *Garretson,* 407 F.3d at 799 (internal quotation marks and citations omitted).

Characteristically, in her response to Defendants' motion, Plaintiff makes little effort to explain how the record in this case could be viewed as establishing extreme and outrageous conduct by any particular Defendant that would support a claim of intentional infliction of emotional distress. The only Defendant identified by name in Plaintiff's terse, four-sentence discussion of this claim is co-worker Jose Venegas, and she makes reference to a September 2006 incident in which Venegas purportedly rammed her with trolleys. Yet, there is no evidence that Plaintiff sought or required medical attention for this purported "assault[]," (Plaintiff's Response Br. at 20), nor that she suffered severe emotional distress as a result of this incident. Moreover, it appears that this was a one-time incident. As for Plaintiff's vague assertions that unspecified Defendants belittled, degraded, and threatened her, (*see id.*), she makes no effort to link these accusations to any of the individual Defendants who have brought the present motion, and the above-cited case law holds that such insults, annoyances, and threats do not suffice to establish liability for intentional infliction of emotional distress. Accordingly, Defendants are entitled to summary judgment in their favor on this claim.

**F.    Plaintiff's Claims Against Defendant Karen Damerow Lack Any Basis in Fact or Law, and Plaintiff's Counsel Is Subject to Sanctions for Continuing to Pursue These Claims.**

33

Apart from challenging each of the seventeen claims asserted in Plaintiff's complaint, Defendants argue in the present motion that Plaintiff has utterly failed to identify any behavior by individual Defendant Karen Damerow, Sky Chefs' human resources manager, "that was discriminatory, retaliatory, or which constituted intentional infliction of emotional distress." (Defendants' Motion, Br. in Support at 18.) Plaintiff has not addressed this contention in her response to Defendants' motion. Consequently, the Court deems Plaintiff's claims against Defendant Damerow as having been abandoned. In addition, the Court agrees with Defendants that there is no basis in the record for imposing individual liability on Defendant Damerow under any of the myriad theories of recovery advanced in Plaintiff's complaint.

Importantly, however, Defendants represent in their motion that Plaintiff declined to concur in this (or any other) relief sought in Defendants' motion. (*See* Defendants' Motion at ¶ 5.) As noted earlier, Plaintiff and her counsel were cautioned at the outset of this case that the Court would "closely and carefully monitor the status of Plaintiff's claims throughout this case to ensure that each claim against each named party is viable and comports with the standards of Fed. R. Civ. P. 11(b)." (6/3/2009 Order at 1 n.1.) By the close of discovery, if not earlier, it should have been evident to Plaintiff and her counsel that the claims asserted against Defendant Damerow lacked a basis in fact or law. Nonetheless, Plaintiff failed to dismiss these claims, thereby necessitating Defendants' challenge to these claims in the present motion.

Under these circumstances, where Plaintiff and her counsel continued to pursue

34

claims after they knew or should have known that they lacked merit, and where the Court expressly cautioned against such persistence in pursuing claims past the point of viability, the Court readily concludes that an award of sanctions against Plaintiff's counsel is warranted under Fed. R. Civ. P. 11(c).  *See Runfola & Associates, Inc. v. Spectrum Reporting II, Inc.,* 88 F.3d 368, 373-74 (6th Cir. 1996); *B & H Medical, L.L.C. v. ABP Administration, Inc.,* 354 F. Supp.2d 746, 748-49 (E.D. Mich. 2005), *aff'd,* 526 F.3d 257 (6th Cir. 2008).  Within fourteen days of the date of this opinion and order, Defendants shall file a statement of the attorney fees they incurred in preparing and filing the present motion.  Upon reviewing this statement, the Court will then determine an appropriate percentage of these fees to be paid by Plaintiff's counsel to Defendants as a sanction for counsel's violation of Fed. R. Civ. P. 11(b)(2)-(3).

**G.    Plaintiff's Federal Claims Against the Non-Moving Defendants Are Subject to Dismissal.**

Having addressed each of the challenges advanced by the moving Defendants, the Court turns finally to Plaintiff's claims against the remaining individual Defendants who were not parties to the present motion.  As noted earlier, these Defendants include (i) Mike Darovitz, Derrick Taylor, Darrin Simmons, Tracy Steele, and Dexter Thomas, who have yet to appear or file any responsive pleadings in this case, and (ii) Tony Hines, who initially was represented by the attorneys who filed the present motion, but who is currently unrepresented.  As to the former group of individual Defendants, the clerk has entered their defaults under Fed. R. Civ. P. 55(a), but Plaintiff has not pursued default judgments under Fed. R. Civ. P. 55(b).  As to Defendant Hines, the claims against this individual have not been the subject of any dispositive motion.

Under these circumstances, the Court elects to dismiss the federal claims asserted against these non-moving Defendants, and to remand the remaining state-law claims to state court for further proceedings.  The bulk of Plaintiff's federal claims have been brought under Title VII, but individual co-workers and supervisors are not subject to liability under this statute.  *See Wathen v. General Electric Co.,* 115 F.3d 400, 405-06 (6th Cir. 1997); *DeBiasi v. Charter County of Wayne,* 537 F. Supp.2d 903, 909 (E.D. Mich. 2008).   This leaves only Plaintiff's claim of retaliatory discharge under the FMLA, and the law of this circuit appears to be unsettled as to whether the FMLA imposes individual liability on private-sector employers.  *See Mitchell v. Chapman,* 343 F.3d 811,

36

827-28 (6th Cir. 2003) (addressing this question only in dicta).  Yet, even assuming

individual liability is permitted under this statute, the record indicates that none of the

non-moving Defendants was involved in the decision to terminate Plaintiff's employment,

(*see* Defendants' Motion, Ex. X., Interrogatory Responses at 11-12), and these individuals

plainly could not have acted with a retaliatory motive with respect to a decision in which

they played no part.  Finally, the Court has now granted summary judgment to the moving

Defendants on Plaintiff's claim of retaliatory discharge under the FMLA, and the grounds

for this ruling did not turn upon the conduct or culpability of any individual Defendant.

Accordingly, the Court finds no basis for permitting Plaintiff to proceed with her

federal claims against the non-moving Defendants.[23]  Moreover, having resolved all of the

claims over which it has original jurisdiction, the Court declines to retain and exercise

supplemental jurisdiction over the state-law claims asserted against the non-moving

Defendants.  *See* 28 U.S.C. § 1367(c)(3).  Rather, these claims will be remanded to state

court.

---

[23]It is not clear whether, in order to dismiss the federal claims asserted against the non-moving Defendants, the Court must first set aside the defaults entered by the clerk against those Defendants who have yet to appear in this action.  Assuming this is necessary, the Court finds "good cause" for doing so, *see* Fed. R. Civ. P. 55(c), where the federal claims asserted against these individuals are not viable, and where Plaintiff failed to vigorously pursue these claims by promptly moving for a default judgment after the clerk entered the defaults of these parties.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' March 1,

2010 motion for summary judgment (docket #61) is GRANTED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 22, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 22, 2011, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager